The Honorable Brian D. Lynch
Hearing date: March 31, 2021
Hearing time: 9:00 a.m.
Response date: March 24, 2021
Chapter 7
Location: Telephonic

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:                                          No. 20-41126

ISMAELITE LAURORE,                   DECLARATION OF KATHRYN A. ELLIS
                                                 IN SUPPORT OF MOTION TO APPROVE
                                                 SALE OF PROPERTY FREE AND CLEAR
                            Debtor.             OF LIENS PURSUANT TO 11 U.S.C. § 363
                                                 (f)

Kathryn A. Ellis, declares and states as follows:

1.      I am the Chapter 7 Trustee herein, have testimonial knowledge of the facts set

forth in this declaration and am competent to testify thereto.  I make this declaration in support

of the motion to approve sale of the estate's interest in the property located at 1928 Strathmore

Circle, Mount Dora, FL, free and clear of all liens, pursuant to 11 U.S.C. § 363 (f).

2.      The debtor filed the present Chapter 7 Bankruptcy Petition on April 27, 2020 and

listed her interest in the real property located at 1928 Strathmore Circle, Mount Dora, FL on

Schedule A.  See Docket No. 1, page 11.  I engaged the services of Kavita Uttamchandani and

Century 21 Carioti as the real estate agent and broker to sell this property and BK Global Real

Estate Services ("BKRES") to negotiate with the creditor(s) secured by the property.  The

property was listed for sale on September 8, 2020 in the amount of $255,700.00 and the present,

full price offer was received.  The present offer is the only active offer the Trustee has and is the

highest and best offer received to date.  A copy of the Purchase and Sale Agreement is attached

DECLARATION OF KATHRYN A. ELLIS IN SUPPORT
OF MOTION TO APPROVE SALE OF PROPERTY FREE
AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363 (f) - 1

KATHRYN A. ELLIS PLLC
5506 6th Ave S
Suite 207
Seattle, WA 98108
(206) 682-5002

Case 20-41126-BDL    Doc 35    Filed 02/26/21    Ent. 02/26/21 12:04:24    Pg. 1 of 36

hereto as Exhibit 1.

3. The real property named above is purportedly encumbered by liens in the following priority and amounts:

| Creditor | Recording Date | Approximate Amount Due |
|---|---|---|
| Lake County Tax Collector | N/A (Property Taxes) | $0.00 |
| JPMorgan Chase Bank NA | 12/28/2007 | $332,325.00 |

I seek authority to pay the first position Deed of Trust in favor of JPMorgan Chase Bank NA, and/or assigns, in the amount of approximately $221,180.07, or such sum as may be negotiated or adjusted to accomplish a sale, in full satisfaction of its lien against this property, after all costs of closing, including real estate commissions, property taxes, excise taxes, statutory utility and/or HOA liens, and other closing costs, together with a buyer's premium to the estate in the amount of $15,225. Attached hereto as Exhibit 2 are true and correct copies of the short sale approval letters issued by JPMorgan Chase Bank NA on January 26, 2021 and February 23, 2021.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED this 26th day of February, 2021 at Seattle, Washington.

By: /s/ Kathryn A. Ellis
Kathryn A. Ellis

C:\Shared\OneDrive - Kathryn A Ellis\Shared\KAE\Dox\TRUSTEE\Laurore\sale_dec.wpd

**DECLARATION OF KATHRYN A. ELLIS IN SUPPORT OF MOTION TO APPROVE SALE OF PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363 (f) - 2**

KATHRYN A. ELLIS PLLC
5506 6th Ave S
Suite 207
Seattle, WA 98108
(206) 682-5002

# EXHIBIT 1



## Trustee Transaction Overview

Property Address:
**1928 Strathmore Cir Mount Dora, FL 32757**

Seller Name (Trustee Name):
**Trustee Kathryn Ellis, BK Trustee for the Estate of Ismaelite Laurore**

| | |
|---:|:---|
| **CASE NUMBER:** | 20-41126 |
| **LIST PRICE:** | $255,700 |
| **OFFER PRICE:** | $255,700 |
| **PROPOSED BANKRUPTCY ESTATE FEE:** | $12,785 + $5,000 buyer's premium |

Bankruptcy Estate Fee will be a combination of a 5% carve out paid by the secured creditor and a $5,000 buyer's premium totaling $17,785.

_____       9/16/20
Trustee Signature                              Date

dotloop signature verification: dtlp.us/tn714-nfi5-5w7A

# "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



1* **PARTIES:** KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE _____ ("Seller"),
2* and Timothy Johnson and Courtney Johnson _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):

6 **1. PROPERTY DESCRIPTION:**
7*     (a) Street address, city, zip: 1928 Strathmore Circle, Mount Dora, FL 32757
8*     (b) Located in: Lake _____ County, Florida. Property Tax ID #: 17-19-27-0010-000-09300
9*     (c) Real Property: The legal description is MOUNT DORA, LANCASTER AT LOCH LEVEN PHASE ONE SUB LOT 93 PB 59 PG 1-4
10     ORB 3561 PG 103
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18     drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19     and other access devices, and storm shutters/panels ("Personal Property").
20*     Other Personal Property items included in this purchase are: Per MLS
21
22     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*     (e) The following items are excluded from the purchase: _____
24

25 <div align="center">**PURCHASE PRICE AND CLOSING**</div>

26* **2. PURCHASE PRICE** (U.S. currency): ................................................................. $ 255,700
27*     (a) Initial deposit to be held in escrow in the amount of (**checks subject to COLLECTION**) ....... $ 2557
28     The initial deposit made payable and delivered to "Escrow Agent" named below
29*     (**CHECK ONE**): (i) ☐ accompanies offer or (ii) ☑ is to be made within 2 (if left
30     blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31     OPTION (ii) SHALL BE DEEMED SELECTED.
32*     Escrow Agent Information: Name: Ocean Title, LLC
33*     Address: 1095 Broken Sound Parkway, NW #100
34*     Phone: 866-202-8200     E-mail: info@oceantitle.com     Fax: _____
35*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*     days after Effective Date ............................................................................. $ _____
37     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ $ 204,560
39*     (d) Other: Additional escrow 72 hrs after short sale approval ................................. $ 10,228
40
41*     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42     transfer or other COLLECTED funds ................................................................. $ 38,355
    **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**

43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*     09/18/2020 _____ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").

50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*     ("Closing") on Per BK Court _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials [initials] 09/14/20 [initials] 09/14/20     Page 1 of 12      Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-5 Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: [illegible]

**5. EXTENSION OF CLOSING DATE:**

    (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

    (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

    (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

    (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☑ may not assign this Contract.

<div align="center">

**FINANCING**

</div>

**8. FINANCING:**

    ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

    ☑ (b) This Contract is contingent upon Buyer obtaining approval of a ☑ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☑ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed 5_____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of 30_____(if left blank, then 30) years ("Financing").

    (i) Buyer shall make mortgage loan application for the Financing within _____(if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

    (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

    (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

    (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

        (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or

        (2) terminate this Contract.

Buyer's Initials _____ 09/14/20  09/14/20

Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-4x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: [illegible]

109       (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112 by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.
113       (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115 from all further obligations under this Contract.
116       (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118 default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119 have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120 of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121 Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122 Contract.
123*   ☐ (c) Assumption of existing mortgage (see rider for terms).
124*   ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125                    **CLOSING COSTS, FEES AND CHARGES**

126 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127     **(a) COSTS TO BE PAID BY SELLER:**
128     • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
129     • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
130     • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
131*     • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
132       If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133       a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134       Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135       such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
136     **(b) COSTS TO BE PAID BY BUYER:**
137     • Taxes and recording fees on notes and mortgages        • Loan expenses
138     • Recording fees for deed and financing statements       • Appraisal fees
139     • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
140     • Survey (and elevation certification, if required)         • Buyer's attorneys' fees
141     • Lender's title policy and endorsements             • All property related insurance
142     • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
143     • Municipal lien search (if Paragraph 9(c)(ii) is checked)         9 (c)(iii) is checked.)
144*     • Other:_____
145*     **(c) TITLE EVIDENCE AND INSURANCE:** At least_____(if left blank, then 15, or if Paragraph 8(a) is checked,
146     then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147     licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148     Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149     obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150     copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151     premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152     forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153     and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154     closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155     search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156     liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157     **(CHECK ONE):**
158*     ☑ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159     premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160     endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161     provider(s) as Buyer may select; or
162*     ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163     services related to Buyer's lender's policy, endorsements and loan closing; or

Buyer's Initials [initials] 09/14/20   [initials] 09/14/20     Page 3 of 12         Seller's Initials ___ ___
FloridaRealtors/FloridaBar-ASIS-5x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dtlp.us/tnz1-CaF4J-SwvA

164 ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]**: Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168 policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
170 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
173 (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☑ N/A shall pay for a home warranty plan issued by
174 _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
177 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**
183 ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.
185 ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 <div align="center">**DISCLOSURES**</div>

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210 may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

Case 20-41126-BDL  Doc 35  Filed 02/26/21  Ent. 02/26/21 12:04:24  Pg. 8 of 36

dotloop signature verification: dtlp.us/2re-t-l-4GU/S/x7A

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

11. **PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

12. **PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have 10 ____ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

dotloop signature verification:

274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.
277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

## ESCROW AGENT AND BROKER

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
284 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286 take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287 liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288 the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289 the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290 dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291 notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292 extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293 comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294 mediation, arbitration, interpleader or an escrow disbursement order.
295 In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300 termination of this Contract.
301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
307 GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
308 FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
309 WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

324 **15. DEFAULT:**
325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Case 20-41126-BDL    Doc 35    Filed 02/26/21    Ent. 02/26/21 12:04:24    Pg. 10 of 36

dotloop signature verification: dtlp.us/mhi-Dat6J-5w74

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
333 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.
338 This Paragraph 15 shall survive Closing or termination of this Contract.
339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:
342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).
345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.
351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357 **18. STANDARDS:**
358 **A. TITLE:**
359 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
371 any violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.
374 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

dotloop signature verification: dtlp.us/ztv1-CaSt-Swrk

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

Buyer's Initials [signature] 09/04/20 [signature] 09/14/20  Page 8 of 12  Seller's Initials [signature]

FloridaRealtors/FloridaBar-ASIS-5x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Case 20-41126-BDL    Doc 35    Filed 02/26/21    Ent. 02/26/21 12:04:24    Pg. 12 of 36

dotloop signature verification: dtlp.us/hhx1-CzRU-Swx2

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

439 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440 Contract.
441 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 **(i) LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 **(ii) CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 **(iii) FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 **(iv) PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.
489 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 1.25% of estimated

dotloop signature verification: dtlp.us/tNzt-GaVd-5wxA

496 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
502 **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506 upon, nor extended or delayed by, such Exchange.
507 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510 the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511 the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512 if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513 (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514 shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515 as determined by Florida's Electronic Signature Act and other applicable laws.
516 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification or change
519 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520 to be bound by it.
521 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523 rights.
524 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
526 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527 **received, including Deposits, have become actually and finally collected and deposited in the account of**
528 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
530 **T. RESERVED.**
531 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533 county where the Real Property is located.
534 **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538 from the IRS authorizing a reduced amount of withholding.
539 (i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544 to the IRS.
545 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547 reduced sum required, if any, and timely remit said funds to the IRS.
548 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials ___ ___      Page 10 of 12      Seller's Initials ___ ___

FloridaRealtors/FloridaBar-ASIS-5x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dotloop.com/my/verification

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

568 ## ADDENDA AND ADDITIONAL TERMS

569 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract (Check if applicable):

☐ A.  Condominium Rider
☐ B.  Homeowners' Assn.
☐ C.  Seller Financing
☐ D.  Mortgage Assumption
☐ E.  FHA/VA Financing
☐ F.  Appraisal Contingency
☐ G.  Short Sale
☐ H.  Homeowners/Flood Ins.
☐ I.  RESERVED
☐ J.  Interest-Bearing Acct.

☐ K.  RESERVED
☐ L.  RESERVED
☐ M.  Defective Drywall
☐ N.  Coastal Construction Control Line
☐ O.  Insulation Disclosure
☐ P.  Lead Paint Disclosure (Pre-1978)
☐ Q.  Housing for Older Persons
☐ R.  Rezoning
☐ S.  Lease Purchase/ Lease Option

☐ T.  Pre-Closing Occupancy
☐ U.  Post-Closing Occupancy
☐ V.  Sale of Buyer's Property
☐ W.  Back-up Contract
☐ X.  Kick-out Clause
☐ Y.  Seller's Attorney Approval
☐ Z.  Buyer's Attorney Approval
☐ AA. Licensee Property Interest
☐ BB. Binding Arbitration
☐ CC. Miami-Dade County Special Taxing District Disclosure
☒ Other: BK Global add.

571 * **20. ADDITIONAL TERMS:** Buyer agrees to pay $5000 buyers premium
572
573
574
575 *✗ This Sale is subject to the*
576
577
578 *approval of the US Bankruptcy*
579
580
581
582 *Court & the Addendum hereof.*
583
584
585
586
587

588 ## COUNTER-OFFER/REJECTION

589 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591 * ☐ Seller rejects Buyer's offer.

Buyer's Initials [signature] 09/14/20 [signature] 09/14/20

Page 11 of 12

Seller's Initials _____ _____

FloridaRealtors/FloridaBar-ASIS-4 Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dtlp.us/Yn-LC45U-3w7A

592 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598 *interested persons.*

599 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600 TO BE COMPLETED.

601* Buyer: _Timothy Johnson_     dotloop verified 09/14/20 9:36 AM EDT U2XD-HERG-FRYE-CJ3A     Date: _____

602* Buyer: _Courtney Johnson_     dotloop verified 09/14/20 9:47 AM EDT C9ON-2DWO-5648-CFZP     Date: _____

603* Seller: _____     Date: _____

604* Seller: _____     Date: _____

605 Buyer's address for purposes of notice       Seller's address for purposes of notice
606* _____       _____
607* _____       _____
608* _____       _____

609 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614 made by Seller or Listing Broker to Cooperating Brokers.

615* Malini Uttamchandani       Kavita Uttamchandani LLC
616 **Cooperating Sales Associate, if any**       **Listing Sales Associate**

617* Century 21 Carioti       Century 21 Carioti
618 **Cooperating Broker, if any**       **Listing Broker**

Buyer's Initials  TJ 09/14/20  CJ 09/14/20     Page 12 of 12     Seller's Initials ____ ____
FloridaRealtors/FloridaBar-ASIS-5x  Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dtlp.us/xHR5-2Y1c-FvHu



## Purchase & Sale of Real Property Contract Addendum

| 1928 Strathmore Circle, Mount Dora, FL 32757 |
|---|

## Property Address

1.  Buyer acknowledges that this property is subject to Short Sale Lender or Servicer Approval as applicable and Bankruptcy Court Approval of the sale or transfer of the subject property.

2.  The Bankruptcy Estate Fee is to be paid from the Sellers proceeds or as a buyer's premium and said Fee shall be made payable to the Bankruptcy Estate.

3.  Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. Seller is unable to remove any debris or personal property left on the Property nor warrants that any appliances or other personal property will be left on the Property or transferred as part of this transaction.

4.  Seller shall make no concessions and can pay no closing costs to, for or on behalf of the buyer.

5.  The parties agree that the **ESCROW AGENT** for this transaction is:

| | |
|---|---|
| **ESCROW AGENT** | Ocean Title |
| **ADDRESS** | 1095 Broken Sound Parkway, NE Suite 100 |
| **CITY, STATE, ZIP** | Boca Raton, FL 33487 |
| **PHONE** | 866-202-8200 |
| **EMAIL** | josh@oceantitle.com |

The initial earnest money deposit in the amount of 1% of the purchase price is due to escrow agent within 48 hours of seller's acceptance of the contract. The second (2nd) earnest money deposit in the amount of 9% of the purchase price for cash transactions (total earnest money deposits equal 10% for cash transactions) or 4% of the purchase price for financed transactions (total earnest money deposits equal 5% for financed transactions) are due to escrow agent within 72 hours of the issuance of the short sale approval letter by the short sale lender or servicer. All earnest money deposits are to be deposited with escrow agent in the form of a cashier's check or bank wire.

dotloop signature verification: ·PPIS·UPAVUUR·I·141Z·FAS4

6.    The CLOSING AND TITLE AGENT for this transaction shall be:

| | |
|---|---|
| **CLOSING AND TITLE AGENT** | Ocean Title |
| **ADDRESS** | 1095 Broken Sound Parkway, NE Suite 100 |
| **CITY, STATE, ZIP** | Boca Raton, FL 33487 |
| **PHONE** | 866-202-8200 |
| **EMAIL** | josh@oceantitle.com |

Closing and Title Agent duties shall include, but are not limited to: drafting estimated settlement statements upon execution of contract and as requested or required by the short sale lender or servicer in order to obtain the short sale approval(s) for the subject transaction (including all seller side fees and pro-rations), working with BK Global in regard to obtaining said short sale approval(s) and to clear any and all liens that may encumber the property or title to the subject property (if any), and coordinating the closing of this transaction with the real estate agents or brokers as applicable and the parties to the transaction including the Trustee for the selling Bankruptcy Estate.

7.    The Seller in this transaction is exempt from providing the Homeowner's Association documents to Buyer as this is a court-ordered sale transaction. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by or due to any Association(s) or Management Company. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8.    If the applicable Short Sale Approval(s) is/are not issued within 120 days after the Seller's contract acceptance date, Buyer may cancel the Residential Purchase Agreement without penalty. If a Short Sale Approval is granted, even after 120 days and if the Buyer has not canceled, then the Buyer may not cancel for this reason.

9.    Buyer agrees to close this transaction within 45 days of issuance of the short sale approval and agrees to close pursuant to the terms included in the Order entered by the Bankruptcy Court approving the sale transaction and pursuant to the instructions of the Federal Bankruptcy Trustee.

10.    Buyer shall be responsible for connecting any utilities necessary to perform inspections requested and any related costs as part of any due diligence period or inspection. Buyer shall use this period to satisfy themselves of all mechanical, structural and/or functional related concerns regarding the property. Buyer shall have the same amount of time to obtain, review, and satisfy themselves of any association rules, regulations, requirements and/or fees, if applicable. Seller will not pay any upfront expenses related to plowing the road for access to the property. Should the Buyer require the septic system be pumped and inspected, that shall be done at the buyer's expense. Buyer shall release the inspection contingency within ten (10) days of seller's acceptance of the Purchase and Sale Contract.

11.    Any issues regarding permitting or open or expired permits will be the responsibility of the buyer and clearance or closure of the same will not be part of the contract and will not be a requirement of closing.

dotloop signature verification: [illegible]

12. Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to the property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13. Buyer shall immediately disclose if he/she is related to the debtor or seller. Buyer understands that most lenders and/or servicers or investors require an Arm's Length Disclosure to be signed by the parties as a condition of the short sale approval, and some lenders and/or servicers or l investors will not allow a family member or relative to purchase a property in which a debtor or seller related to the buyer has or may have interest.

14. Should buyer be representing self as an agent, buyer understands that some lenders and/or servicers or investors will not allow buyer(s) to receive any funds from the sale of the property, including commissions.

15. Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all entity owners and shall provide a copy of the articles of organization (and operating agreement when applicable) which must provide for who is authorized to sign on behalf of the entity. Buyer understands and acknowledges that once Addendum is executed, the name of the buyer cannot be changed for title, closing or any other purpose due to the Short Sale Approval(s).

16. Seller will not pay for an Appraisal or Home Warranty.

17. Buyer understands and agrees that this addendum shall prevail and take precedence where any terms included herein conflict with the original Purchase Agreement.

DATED this _____ day of _____, 201___

**Trustee**

Signature _____

| Kathryn Ellis BK Trustee to the estate of Ismaelite Lauvore |

Print Name

**Buyer**

*Timothy Johnson*

dotloop verified
09/14/20 9:36 AM EDT
TDLV-IUT9-RFXQ-RBYW

Signature

Print Name

**Buyer**

*Courtney Johnson*

dotloop verified
09/14/20 9:47 AM EDT
3VLH-5BA4-KZRB-I9W8

Signature

Print Name

dotloop signature verification: dtlp.us/pqvG-OR4d-9G25

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Buyer(s): Timothy Johnson and Courtney Johnson

Seller(s): Kathryn Ellis BK Trustee to the estate of Ismaelite Laurore

Property: 1928 STRATHMORE CIR, MOUNT DORA, FL 32757

This disclosure is intended to provide direct notice that the following entities may be considered "Affiliated Businesses":

-Ocean Real Estate & Investments, LLC & Ocean Real Estate Services, LLC (collectively referred to as "Ocean Real Estate")

-Ocean Title, LLC ("Ocean Title")

-City Vision National Revitalization, LLC ("CV")

-BK Global, Inc. ("BKG")

An affiliated business arrangement may exist when a single individual or entity holds an ownership interest in two or more separate entities that each provide real estate transaction services and one or more individuals or entities have an ownership interest in two or more of the aforementioned Affiliated Businesses.

Ocean Real Estate & Investments, LLC, Ocean Real Estate Services, LLC, City Vision National Revitalization, LLC and BK Global, Inc. may refer you to Ocean Title, LLC for escrow, title, closing, transaction coordination, document preparation, notary and/or other real estate related settlement service(s). Due to the overlapping entity ownership, the referral of a client or customer (including you) by any of the Affiliated Companies to another may provide the referring company, its owner(s), and/or employees with a financial benefit.

You are not required to use an Affiliated Company as a condition of the purchase or sale of the subject property or to obtain access to any settlement service. An exception may arise when the use of an Affiliated Company is agreed upon in writing pursuant to a purchase and sale agreement between you and the other party to the real estate transaction, or pursuant to an addendum to said agreement agreeing to the use of an Affiliated Company. In that instance, it is not the Affiliated Companies that are requiring the use of an Affiliated Company as a condition of the transaction or to obtain access to a settlement service, but possibly the other party pursuant to applicable contract law.

THERE MAY BE OTHER SETTLEMENT SERVICE PROVIDERS THAT PROVIDE SIMILAR SERVICES AND SUBJECT TO THE AFOREMENTIONED AGREEMENT BETWEEN THE PARTIES, CONTRACT OR ADDENDUMS THERETO, YOU ARE FREE TO SHOP AROUND IN AN EFFORT TO DETERMINE WHETHER YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THE SAME OR SIMILAR SERVICES.

Set forth below is the estimated* range of charges for each of the potential referred services. Please note that in many instances, the payor of a fee for any service(s) listed below may be determined by the Agreement between the parties or an Addendum thereto and as a result, it is possible that a buyer may not be responsible to pay for one or more of the following services:

| | |
|---|---|
| Closing Fee | $595 - $1,495 (plus actual expenses incurred) |
| Title Abstract Fee/Exam Fee | $100 - $250 per parcel |
| Owner's Policy | $5.75 per $1,000 of coverage up to $100,000 (minimum $100); add $5.00 per $1,000 above $100,000 but below $1M; add $2.50 per $1,000 above $1M but below $5M; add $2.25 per $1,000 above $5M but below $10M |
| Lender's Title Policy | $250.00 if issued simultaneously with Owner's Policy; if not, $5.75 per $1,000 of coverage up to $100,000 (minimum $100); add $5.00 per $1,000 above $100,000 but below $1M; add $2.50 per $1,000 above $1M but below $5M; add $2.25 per $1,000 above $5M but below $10M; add $2.00 per $1,000 over $10M |
| Policy Endorsements | Florida Form 9 Endorsement and Navigational Servitude Endorsement: 10% of the combined fees for Lender's and Owner's Policies, Other Endorsements (4.1, 5.1, 6 and 8.1): $25 each |
| Closing Coordination Fee | $295 - $795 (only applicable when Ocean Title is not the title agent) |

*TRANSACTION SPECIFIC FEE QUOTE AVAILABLE UPON REQUEST

ACKNOWLEDGEMENT: I/we have read this Affiliated Business Arrangement Disclosure Statement and understand that one of the Affiliated Companies may refer me/us to another Affiliated Company for escrow, title, closing and/or other related settlement service(s) and that any such referral(s) may provide the referring company, its owner(s), and/or employees with a financial benefit.

Buyer: _Timothy Johnson_

dotloop verified
09/14/20 9:36 AM EDT
EQYT-2ZO6-37LJ-70ST

Date: _____

Buyer: _Courtney Johnson_

dotloop verified
09/14/20 9:47 AM EDT
ZFIC-9UKR-JDUN-DORR

Seller: _____ Date: _____

dotloop signature verification: dtlp.us/hbxc-PWZS-JrjN

# ADDENDUM TO
## Purchase and Sale Agreement

The Purchase and Sale Agreement is amended as follows:

OWNERSHIP AND PRIORITY INFORMATION: Seller warrants that she is the duly appointed acting Chapter 7 Trustee for the bankruptcy estate of Ismaelite Laurore, Bankruptcy Case Number 20-41126, and has the authority to execute this agreement.

1.  DISCLAIMER. Seller makes no representations or warranties and shall not in any way be liable for any representations or warranties with respect to:

    A.  The dimensions, size or acreage of the property;

    B.  The condition of the property or any buildings, structures or improvements thereon, or the suitability of the property for habitation or for buyer's intended use of the property, or any use whatsoever;

    C.  Any environmental, building, zoning, or fire laws or regulations or with respect to compliance therewith, or with respect to the existence of or compliance with any required permits, if any, of any governmental agencies applicable to the property; or

    D.  The absence of asbestos or any hazardous substances on, in or under the property.

2.  This sale is made without representations or warranties of any kind, express or implied, including, without limitation, representations of merchantability and/or fitness for any particular purpose. This sale is "as-is" and "where-is" and the buyer must satisfy itself as to the identity, nature, extent, and quality of the property being sold. As a Trustee in Bankruptcy, Seller is exempt from submission of a Form 17 pursuant to RCW 64.06.010 (6).

3.  All purchase agreements are subject to approval and order of the Bankruptcy Court. The seller will apply to the Bankruptcy Court for approval of the sale set forth herein as soon as reasonably practicable. If the Trustee receives a better offer on the property prior to the court hearing, the Trustee may accept such offer contingent upon approval of the court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from the agreement will not change the law. The Trustee agrees, however, to follow the procedures set forth in the next paragraph allowing the Buyer(s) to attempt to match an opportunity competing offer.

4.  The Trustee agrees to notify Buyer regarding any other competing offers received, and provide a copy of the same to Buyer or Buyer's Agent as soon as the same

was received. Buyer has the right to participate in any 'bidding' process at that time or at the time of the Court Hearing to approve this Sale.

5.    All sales are contingent upon approval of the Bankruptcy Court.

6.    Transfer of title will be by Trustee's Quit Claim Deed.

7.    The buyer(s) agrees to reimburse the Trustee or the Trustee's attorney for the filing fee of $181.00 for the motion to approve this sale. This fee may be reimbursed at the closing of the sale.

_____
Kathryn A. Ellis, Trustee

_____
*Timothy Johnson*

dotloop verified
09/16/20 9:53 PM EDT
BZJU-UAWV-SO34-I2T0

Buyer

_____
*Courtney Johnson*

dotloop verified
09/16/20 9:53 PM EDT
LUSK-NTPF-CZ7Q-X7OK

Buyer

C:\Shared\OneDrive - Kathryn A Ellis\Shared\KAE\Dox\TRUSTEE\Laurore\sale_add.wpd

dotloop signature verification:

## Addendum to Contract

 FloridaRealtors®

Addendum No. 2 _____ to the Contract with the Effective Date of 09/16/2020 _____ between

KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE and KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE (Seller)

and Timothy Johnson and Courtney Johnson _____ (Buyer)

concerning the property described as: 1928 Strathmore Circle, Mount Dora, FL 32757

MOUNT DORA, LANCASTER AT LOCH LEVEN PHASE ONE SUB LOT 93 PB 59 PG 1-4 ORB 3561 PG 103

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

Buyer and seller agree to extend inspection period to October 15, 2020 due to inability to turn utilities on. As soon as servicer clears utility company lien inspection will be conducted.

Buyer: Timothy Johnson    dotloop verified 09/23/20 11:56 AM EDT OALW-TCXI-KQCU-47LW    Date: _____

Buyer: Courtney Johnson    dotloop verified 09/23/20 12:07 PM EDT IJZG-ATWO-158X-73HE    Date: _____

Seller: _____    Date: _____

Seller: _____    Date: _____

ACSP-4   Rev 6/17

© 2017 Florida \Realtors®

dotloop signature verification: dtlp.us/7Wlm-xJ5p3-eJ55

## Addendum to Contract

 FloridaRealtors®

Addendum No. 2 _____ to the Contract with the Effective Date of 09/16/2020 _____ between

KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE and KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE (Seller)

and Timothy Johnson and Courtney Johnson _____ (Buyer)

concerning the property described as: 1928 Strathmore Circle, Mount Dora, FL 32757 _____

MOUNT DORA, LANCASTER AT LOCH LEVEN PHASE ONE SUB LOT 93 PB 59 PG 1-4 ORB 3561 PG 103 _____

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

Buyer and seller agree to extend inspection period to October 31, 2020 due to inability to turn utilities on.  As soon as servicer clears utility company lien inspection will be conducted.

Buyer: _Timothy Johnson_    dotloop verified 10/14/20 2:05 PM EDT RYWP-XGKS-WOBD-BIVA    Date: _____

Buyer: _Courtney Johnson_    dotloop verified 10/14/20 2:58 PM EDT 2P7P-UCPD-KPTE-ZCSN    Date: _____

Seller: _____ Date: _____

Seller: _____ Date: _____

ACSP-4  Rev 6/17

© 2017 Florida \Realtors®

dotloop signature verification: dtlp.us/ncbC-fq6U-B5ul

**Addendum to Contract**



Addendum No. 3 _____ to the Contract with the Effective Date of 09/16/2020 _____ between

KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE and KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE (Seller)

and Timothy Johnson and Courtney Johnson _____ (Buyer)

concerning the property described as: 1928 Strathmore Circle, Mount Dora, FL 32757 _____

MOUNT DORA, LANCASTER AT LOCH LEVEN PHASE ONE SUB LOT 93 PB 59 PG 1-4 ORB 3561 PG 103 _____
(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

Buyer and seller agree to extend inspection period to November 30, 2020 due to inability to turn utilities on.  As soon as servicer clears utility company lien inspection will be conducted.

Buyer: _Timothy Johnson_____  
dotloop verified 10/31/20 1:54 PM EDT Q2FA-C9YE-T8RN-OU84

Date: _____

Buyer: _Courtney Johnson_____  
dotloop verified 10/31/20 1:55 PM EDT IP2D-MOOQ-VROG-7ZXC

Date: _____

Seller: _____

Date: _____

Seller: _____

Date: _____

ACSP-4  Rev 6/17

© 2017 Florida \Realtors®

dotloop signature verification: dtlp.us/c5g5-9jwr-4u0l

## Addendum to Contract

 FloridaRealtors®

Addendum No. 6_____ to the Contract with the Effective Date of 09/16/2020_____ between

KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE and KATHRYN ELLIS BK TRUSTEE TO THE ESTATE OF ISMAELITE LAURORE (Seller)

and Timothy Johnson and Courtney Johnson_____ (Buyer)

concerning the property described as: 1928 Strathmore Circle, Mount Dora, FL 32757_____

MOUNT DORA, LANCASTER AT LOCH LEVEN PHASE ONE SUB LOT 93 PB 59 PG 1-4 ORB 3561 PG 103___
(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

The second escrow deposit of $10,228.00 will be paid by the buyers up to 48 hours after the inspection has been completed.

Buyer: _Timothy Johnson_____   Date: _____

Buyer: _Courtney Johnson_____   Date: _____

Seller: _____   Date: _____

Seller: _____   Date: _____

dotloop verified
02/04/21 5:33 PM EST
JAXU-LPTO-SGEB-HFXH

dotloop verified
02/04/21 5:34 PM EST
LIKA-SJJY-4YLO-SXLM

ACSP-4   Rev 6/17

© 2017 Florida \Realtors®

# EXHIBIT 2



February 23, 2021

Ismaelite Laurore
c/o Julie C Rho
4003 6TH AVE
Tacoma, WA 98406

**We're giving you more time to close on your short sale**

Account: 3015091592
Property Address: 1928 Strathmore Circle
Mount Dora, FL 32757-0000

Customer Name(s): Ismaelite Laurore (the "Seller")

Buyer: Timothy Johnson (the "Buyer")
Courtney Johnson

Dear Ismaelite Laurore:

We sent you a letter that conditionally approved your short sale contract. We extended the approval to April 9, 2021. **The terms and conditions in our letter dated January 26, 2021 apply to this extension.**

If you have questions, please call us. We're here Monday through Friday from 9 a.m. to 6 p.m. Eastern Time.

Sincerely,

Marlyn Crossley
Short Sale Closer
Chase
1-877-496-8028
1-866-220-4130 Fax; it's free from any Chase branch

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-877-496-8028, de lunes a viernes de 9 a.m. a 6 p.m., hora del Este.

### Important Legal Information

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

CR27937
CA056

Chase
P.O. Box 469030
Glendale, CO 80246-9030



January 26, 2021


Ismaelite Laurore
c/o Julie C Rho
4003 6TH AVE
Tacoma, WA 98406


**We conditionally approved your short sale contract - here's what you need to do next**

| | |
|---|---|
| Account: | 3015091592 |
| Property Address: | 1928 Strathmore Circle |
| | Mount Dora, FL 32757-0000 |

Customer Name(s): Ismaelite Laurore (the "Seller")

Buyer: Timothy Johnson (the "Buyer")
Courtney Johnson

Dear Ismaelite Laurore:

We have reviewed and conditionally approved the short sale contract you submitted. We'll accept a minimum net of $221,180.07 to release the lien on your property. Chase must approve the final closing costs and concessions before you're authorized to proceed with closing. We reserve the right to remove closing costs and concessions, when applicable, if it's decided that they're not allowed as part of the transaction. This conditional approval is good through February 18, 2021.

You must receive authorization from us to close on the sale for our approval to be final. We won't accept net proceeds unless all of the documents required for closing have been received and approved.

Chase Home Lending employees are prohibited from purchasing homes through a short sale where Chase is the lender or servicer.

The parties below must complete, sign and date the attached Short Sale Affidavit:
- The buyers
- The buyers' agent
- The sellers
- The sellers' agent or listing agent

We must receive this form to authorize closing the transaction.

Here are the terms and conditions of this sale:

1. **Terms:** The sale and closing comply with all terms and conditions of the sale approval agreement (the "Agreement"). Updated documents may be required prior to closing if a document expires or any of the terms change from the prior approval offer.

2. **Changes:** Any change to the terms and representations in the Agreement must be approved by us in writing. We aren't required to approve any changes.

3. **Deficiency:** Any deficiency balance (which is the difference between the balance on the mortgage and the short sale amount) remaining on the loan secured by the property above will be canceled.

4. **Incentives:** You won't receive an incentive from us to participate in the sale of the property. This means you're responsible for all relocation or other expenses that you may incur as a result of the sale. Neither you nor the Buyer are to receive any proceeds from the sale of the property.

5. **Deed restriction:** The deed conveying the Property from the Seller to the Buyer must contain the following provision:

   Grantee herein is prohibited from conveying captioned property for any sales price for a period of 30 days from February 18, 2021. After this 30 day period, Grantee is further prohibited from conveying the property for a sales price greater than $306,840.00 until 90 days from February 18, 2021. These restrictions shall run with the land and are not personal to the Grantee.

6. **Surplus funds:** Any excess net proceeds must be sent to us. Any funds being held by Chase at the time of closing will not be refunded.

7. **Concessions:** Concessions such as a buyer impound account, homeowner's insurance and prepaid interest can only be used for customary closing costs. Chase must approve the final concession amounts before you are authorized to proceed with closing.

8. **Closing Costs:** Chase must approve the final closing costs before you are authorized to proceed with closing. We reserve the right to remove closing costs if deemed disallowable to the transaction.

9. **Closing Disclosure or HUD-1 Settlement Statement:** We must receive a Preliminary Closing Disclosure or HUD-1 Settlement Statement at least five business days before the closing date. We must also receive the signed final Closing Disclosure or HUD-1 Settlement Statement within 24 hours after closing. All incentive payments must be reflected on the Closing Disclosure or HUD-1 Settlement Statement showing the name of the recipient. Please send these documents by fax to 1-866-220-4130.

10. **Real estate commissions:** Unless otherwise prohibited by the investor, real estate commissions can be up to 6% of the contract sale price. They can never exceed 6% of the contract sale price. Neither you (seller) nor the buyer may receive a commission.

11. **Property tax calculations:** We may notify you of any tax disbursements prior to the closing date. These disbursements should be accounted for in the final closing documents provided five business days prior to the sale, with the excess funds refunded to us.

12. **Title:** If any part of the title to the property is transferred before closing, we'll cancel this approval without further notice.

13. **Bankruptcy:** If you're currently in bankruptcy or you file bankruptcy before closing, you must obtain any required consent or approval from the Bankruptcy Court.

14. **Payment instructions: We must receive the payoff funds from the sale within 24 hours after closing.** Please use the following wiring instructions or overnight mailing address and include your full loan number on the payment.

| | |
|---|---|
| Wire Transfer: | Chase |
| | Routing number: 021000021 |
| | Account number: ████2993 |
| | Account name: Chase Default Payoff Account Client #156 |
| | Loan number: 3015091592 |
| | |
| Overnight Mail: | JPMorgan Chase Bank, N.A. |
| | Attn: Short Sales |
| | Mail Code OH4-7133 |
| | 3415 Vision Drive |
| | Columbus, OH 43219-6009 |

**See the chart below for the breakdown of net proceeds.**

<div style="border:1px solid">

**Minimum Net Proceeds to Lender**

</div>

| | |
|---|---|
| Sales price | $255,700.00 |
| | |
| **Total minimum net proceeds to be received by the lender** | **$221,180.07** |

15. **Net proceeds certified check or wire confirmation of the funds** - If providing a certified check, include the tracking information. If funds are wired, please fax the wire confirmation with federal reference number and Chase loan number.

This approval supersedes all other agreements and applies only to this mortgage. We'll let you know if we need any additional information from you before the closing date. Any additional loans/liens from you or any other party in favor of Chase or any affiliated entity, whether on this property or otherwise, are excluded from the terms of this letter.

If an agreement is reached to settle this debt by paying less than the full outstanding balance, we want you to know that the failure to pay the full balance may result in you not qualifying in the future for some Chase products or services (so your application may be denied), or the terms of those Chase products or services may be less favorable.

Year-end tax information: If required by the IRS, we'll report the amount of canceled debt to you on an IRS Form 1099-C (Cancellation of Debt) in the appropriate tax year. You may want to ask your tax or financial advisor, call the IRS at 1-800-829-1040, or visit IRS.gov for information about how this may affect you.

If you have questions, please call us. We're here Monday through Friday from 9 a.m. to 6 p.m. Eastern Time.

Sincerely,

Marlyn Crossley
Short Sale Relationship Manager
Chase
1-877-496-8028; we accept operator relay calls
1-866-220-4130 Fax; it's free from any Chase branch

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-877-496-8028 de lunes a viernes de 9 a.m. a 6 p.m., hora del Este.

### Important Legal Information

**Information about your bankruptcy filing**
To the extent your original obligation is subject to the automatic stay of bankruptcy or was discharged under the United States Bankruptcy Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this notice means that you're required to repay a debt that's subject to the automatic stay or has been discharged. Any payment you make on the account is voluntary, but if the original obligation is secured by collateral, we retain the rights under any applicable security instrument.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, some states allow for a payment deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

# SHORT SALE AFFIDAVIT

Pursuant to a residential purchase agreement (the "Agreement") dated on September 16, 2020, the parties identified below as the "Seller" and the "Buyer," respectively, are involved in a real estate transaction, ratified on loan number 3015091592, whereby the real property commonly known as 1928 Strathmore Circle, Mount Dora, FL 32757-0000 (the "Property"), will be sold by the Seller to the Buyer.

Chase (the "Lender and/or Servicer") owns or is the authorized servicer of a deed of trust or mortgage against the Property. In order to complete the sale of the Property, the Seller and the Buyer have jointly asked the Lender and/or Servicer to discount the total amount owed on the Loan secured by the deed of trust or mortgage. The Lender and/or Servicer, in consideration of the representations made below by the Seller, the Buyer, and their respective agents, agrees to accept less than the amount owed to resolve its Loan (pursuant to a separate Agreement between the Lender and/or Servicer and the Seller) on the express condition that the Seller, the Buyer, and their respective agents (including, without limitation, real estate agents, escrow agents, and title agents) each truthfully represents, affirms, and states that, to the best of each signatory's knowledge and belief:

a) The sale of the Property is an arm's length" transaction between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise.

b) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Lender and/or Servicer.

c) There are no agreements, understandings or contracts between the parties that the Seller(s) will remain in the Property as a tenant or later obtain title or ownership of the Property, except to the extent that the Seller(s) is permitted to remain as a tenant on the Property for a short term, as is common and customary in the market but no longer than 90 days, in order to facilitate relocation.

d) The buyer cannot resell the property within 30 days of the closing date. The buyer also cannot resell the property for greater than 120% of the short sale price within 90 days of the closing date.

e) Neither the Seller(s) nor the Buyer(s) will receive any funds or commission from the sale of the Property. The Seller(s) may receive a payment or incentive if it is offered by the Lender and/or Servicer. Any incentive payments will be paid at the time of closing and will be reflected on the Closing Disclosure Form or HUD-1 Settlement Statement.

f) No party to the sales contract, including the Buyer, Seller's Agent, Buyer's agent, or Settlement agent, is a relative of, business of, or shares any business interest with the Seller.

g) All amounts to be paid to any party, including holders of other liens on the Property, in connection with the short payoff transaction have been disclosed to and approved by the Lender and/or Servicer and will be reflected on the Closing Disclosure Form or HUD-1 Settlement Statement.

h) The Seller's Listing Agent has presented all offers for the purchase of the Property to the Borrower and no offers have been held, concealed or delayed due to action or inaction by any Agent.

i) By signing this Addendum or Affidavit, Buyer(s) represents that they are not a JPMorgan Chase Bank, N.A., Home Lending employee(s).

j) Each signatory understands, agrees and intends that the Lender and/or Servicer are relying upon the statements made in the Affidavit as consideration for the reduction of the payoff amount of the Property and agreement to the sale of the Property.

k) A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the

Lender and/or Servicer for any and all loss resulting for the misrepresentation, including, but not limited to, repayment of the amount of the reduced payoff of the Property.

l) Each signatory understands that a misrepresentation may subject the party making the misrepresentation to civil and/or criminal liability.

m) The certification will survive the closing of the transaction.

I/We declare under penalty of perjury under the laws of the state of Florida that all statements made in this Affidavit are true and correct.

Additionally, I/we fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly and willfully make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

**Buyer 1**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Buyer 3**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Seller 1**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Seller 3**

_____
(Print Name)

_____
(Signature)

**Buyer 2**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Buyer 4**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Seller 2**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Seller 4**

_____
(Print Name)

_____
(Signature)

_____
(Date)

**Buyer's Agent**

_____
(Print Name)

_____
(Print Company)

_____
(Signature and Date)

**Closing Agent/Attorney**

_____
(Print Name)

_____
(Print Company)

_____
(Signature and Date)

**Transaction Facilitator (if applicable)**

_____
(Print Name)

_____
(Print Company)

_____
(Signature and Date)

_____
(Date)

**Seller's Agent**

_____
(Print Name)

_____
(Print Company)

_____
(Signature and Date)

**Closing Agent/Attorney**

_____
(Print Name)

_____
(Print Company)

_____
(Signature and Date)

ID 3180406
LM040